UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BRIANNA PAIGE VINCENT, et al.      :
    Plaintiffs,                 :
                                :   Case No. 3:04CV491 (JBA)
v.                                 :
                                :
ESSENT HEALTHCARE OF CONNECTICUT,  :
et al.,                            :
    Defendants.                 :

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DOC. #255]

Defendants Mortman, M.D., Physicians for Women's Health
("PWH"), and Sharon Ob/Gyn filed a Motion for Summary Judgment
[Doc. #255] pursuant to Fed. R. Civ. P. 56(c) on all claims
against PWH claiming statute of limitations bar and on Heather
Vincent's claim of negligent infliction of emotional distress.
For the reasons that follow, the Court DENIES defendants' Motion
on all claims against PWH and GRANTS defendants' Motion on the
negligent infliction of emotional distress claim.

## I. Procedural and Factual Background

Plaintiffs filed their complaint against defendants Mortman
and Sharon Ob/Gyn on March 24, 2004 [Doc. #1], with service
completed on Mortman on March 31, 2004.[1]  A separate action
against defendant PWH was commenced on February 22, 2006,
asserting its vicarious liability for the malpractice of Mortman

---

[1] The other original defendants, Essent Healthcare, Inc.,
Essent Healthcare of Connecticut, Inc., and Sharon Hospital are
no longer in this case, having reached a settlement with
plaintiffs.

1

and Sharon Ob/Gyn as set out in No. 04cv941 (JBA).  <u>See</u> <u>Vincent</u>
<u>v. Physicians for Women's Health, L.L.C.</u>, No. 06cv249 (JBA)
([Doc. #1] ¶¶ 2-3).  The two cases were consolidated on March 3,
2006 [Doc. #140].

     As early as 2001, Heather Vincent was seen as a patient by
defendant Dr. Howard Mortman, an employee of defendant Sharon
Ob/Gyn Associates, P.C., "a d/b/a of Physicians for Women's
Health" (Norton letter, No. 06cv249 Compl., Ex. A).  Mortman
provided prenatal, delivery, and postpartum care in relation to
the birth of Brianna on March 15, 2003 at Sharon Hospital.  As an
alleged result of the claimed unreasonably delayed emergency
caesarian section, Brianna now suffers from cerebral palsy and
multiple related conditions, for which compensation is claimed.[2]

     Heather Vincent states that neither Dr. Mortman nor anyone
else at Sharon Ob/Gyn "ever brought to [her] attention the fact
that [Sharon Ob/Gyn] is a D.B.A. of Physicians for Womens [sic]
Health, LLC."  (Vincent Aff. I, Pls. Ex. 2 [Doc. #274-3], ¶¶ 7,
8.)  She claims that she "had never heard of and was unaware that
[PWH] existed or that it operated Sharon Ob/Gyn" until her

_____

     [2] Plaintiffs' expert witness Dr. Joseph J. Higgins, a
pediatric neurologist at the Mid-Hudson Family Health Institute,
observed Brianna on September 13, 2006 and described her as "a
3½-year-old girl with spastic quadriplegia, microcephaly, and
extrapyramidal signs," "dystonia and spasticity in her
extremities," "poor head control, dysconjugate eye movements,"
and "chronic drooling," and that she was "nonverbal" and required
medication and orthopedic treatment.  (<u>See</u> Pls. Ex. A [Doc. #247-
5] at 1.)

lawyers received a letter from defendants' counsel Christine Norton dated April 6, 2006 (id. ¶¶ 3, 4) stating, "Sharon Ob/Gyn Associates, P.C. is a d/b/a of Physicians for Women's Health" (Norton letter, No. 06cv249 Compl., Ex. A).  Plaintiffs commenced suit thereafter against PWH by service of process on February 22, 2006.[3]

## II. Standard

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) when the moving party establishes that there is no genuine issue of material fact to be resolved at trial and that the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  Materiality is determined by the substantive law that governs the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In this inquiry, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Id.  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

---

[3] In Connecticut, an action is commenced upon service of process.  See Conn. Gen. Stat. § 52-45a; Rocco v. Garrison, 848 A.2d 352, 358 (Conn. 2004) (citing Broderick v. Jackman, 355 A.2d 234, 235 (1974); Rana v. Ritacco, 672 A.2d 946, 951 (1996)).

In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden of establishing that there is no genuine issue of material fact in dispute will be satisfied if he or she can point to an absence of evidence to support an essential element of the non-moving party's claim.  Celotex, 477 U.S. at 322-23.  However, "[i]n moving for summary judgment on an issue on which the movant bears the burden of proof at trial (e.g., when a defendant moves for summary judgment on an affirmative defense), the movant must make a strong showing."  Papenthien v. Papenthien, 16 F. Supp. 2d 1235, 1237-38 (D. Cal. 1998).  "Where the moving party has the burden . . . [the] showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party."  Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986) (citing W. Schwarzer, Summary Judgment Under The Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 487-88 (1984)).

On a motion for summary judgment, the Court draws all reasonable inferences in the light most favorable to the party opposing the motion.  Matsushita, 475 U.S. at 587.  However, a party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading," Fed. R. Civ. P. 56(e), and "some metaphysical doubt as to the material facts" is insufficient.  Id. at 586 (citations omitted).

4

## III. Discussion

### A. Statute of Limitations

It is undisputed that the Connecticut statute of limitations applies to plaintiffs' claims, and that an action for "damages for injury to the person, . . . caused by negligence, or by reckless or wanton misconduct, or by malpractice of a physician [or] surgeon" must be brought "within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered," and "no such action may be brought more than three years from the date of the act or omission complained of."  Conn. Gen. Stat. § 52-584.  "Therefore, an action commenced more than three years from the date of the negligent act or omission complained of is barred by the statute of limitations contained in § 52-584, regardless of whether the plaintiff had not, or in the exercise of care, could not reasonably have discovered the nature of the injuries within that time period."  Witt v. St. Vincent's Med. Ctr., 746 A.2d 753, 756 (Conn. 2000) (citing Stein v. Katz, 567 A.2d 1183 (Conn. 1989)).  For "negligence action[s] against health care provider[s]," "upon petition to the clerk of the court where the action will be filed, an automatic ninety-day extension of the statute of limitations shall be granted to allow the reasonable inquiry" into the grounds of the negligence, Conn. Gen. Stat. § 52-190a(b).

5

The medical negligence alleged by the plaintiffs occurred on March 15, 2003 during Brianna's birth, such that the two-year statute of limitations expired on March 15, 2005.  On March 8, 2005, plaintiffs received a 90-day extension of the statute of limitations from the clerk of the court, thereby extending the date for commencement of action to June 13, 2005.  Plaintiffs commenced their action against PWH on February 22, 2006.  The issue is whether plaintiffs are entitled to the three-year repose period extending their cutoff date for claims against PWH to June 13, 2006.[4]

## 1. Knowledge of the existence of PWH

Relying on Tarnowsky v. Socci, 856 A.2d 408 (Conn. 2004), plaintiffs argue that the statute of limitations should be tolled based on the plaintiffs' lack of awareness "of the identity of the defendant."  (See Pls. Opp. Mem. [Doc. #273-1] at 2.) Defendants seek to distinguish Tarnowsky and also claim that Heather Vincent had actual and constructive knowledge of the existence of PWH as early as March 2001 when she signed a form authorizing assignment of her payment and her financial responsibilities to PWH during a visit to Dr. Mortman.[5]  (See

---

[4] In Barrett v. Montesano, 849 A.2d 839, 845-46 (Conn. 2004), the Connecticut Supreme Court held that the 90-day extension under § 52-190a(b) "applies equally to both sections of § 52-584," i.e., the two- and three-year periods.

[5] During a March 27, 2001 visit to Mortman, she signed a "Patient Information" form which reads in part: "I authorize and

6

Defs. Reply Mem. [Doc. #296] at 7.)   Defendants further maintain
that even if the April 6, 2005 letter was the first time
plaintiffs were on notice of the d/b/a relationship, plaintiffs
had two months remaining to file their complaint against PWH
before the extended June 13, 2005 deadline expired.   (Id. at 6.)

Tarnowsky holds that identity of the tortfeasor is a
necessary element of a personal injury suit and that "the two
year statute of limitations set forth in § 52-584 does not begin
to run until a plaintiff knows, or reasonably should have known,
the identity of the tortfeasor," but "that a plaintiff's
ignorance of the identity of a tortfeasor will not excuse the
plaintiffs [sic] failure to bring a negligence action within
three years of the date of the action or omission complained of."
856 A.2d at 416.   In Tarnowsky, the plaintiff claiming premises
liability for injuries sustained in a fall on an icy surface only
learned during formal discovery of the existence of a contractor
who was responsible for removing ice and snow from the property
where the plaintiff fell.   Because the snow removal defendant was
previously unknown to plaintiff, the court held:

a plaintiff who has incurred an actionable injury and

---

assign any payment of medical benefits to the Physicians for
Women's Health LLC, its successors and assigns, or any individual
it may designate for services provided," and "I understand that I
am financially responsible to the Physicians for Women's Health
LLC, its successors and assigns and any individual it may
designate for any balance not covered by insurance."   (Defs.
Reply Mem. at Ex. B.)

knows the identity of one or more of the tortfeasors, but has no reason to suspect the existence of additional responsible parties, clearly cannot bring an action against the unknown parties until he discovers their existence.  In such cases, the blameless failure to discover the existence of the unknown tortfeasors is tantamount to a blameless failure to discover a causal connection between the tortfeasor's breach of duty and the injury, a failure that clearly tolls the statute of limitations.

Id. at 413 (citing Catz v. Rubenstein, 513 A.2d 98, 100-01 (Conn. 1986)).

The relevant inquiry for application of the discovery rule "is whether, in light of all relevant circumstances, the plaintiff exercised reasonable care in the discovery of his or her injury."  Taylor v. Winsted Memorial Hosp., 817 A.2d 619, 624 (Conn. 2003).  "The inquiry is not when the injury could have been discovered; rather, it is when the injury should have been discovered."  Lagassey v. State of Conn., 846 A.2d 831, 848 (Conn. 2004) (emphases in original).[6]

The patient information form Heather Vincent signed in 2001 twice references "Physicians for Women's Health LLC, its successors and assigns" (Defs. Reply Mem. at Ex. B), but it does not indicate a d/b/a relationship, unlike the April 2005 letter

---

[6] See also Cimino v. Alexion Pharm., Inc., No. CV020282661S, 2004 Conn. Super. LEXIS 3873 (Conn. Super. Ct. Dec. 7, 2004) (holding that where plaintiff had been injured in a fall but did not learn of an additional tortfeasor until the original defendant filed an apportionment complaint, "the focus must be on when the plaintiff should have discovered the actionable harm") (emphasis in original).

from Attorney Christine Norton that makes that relationship explicit (see Norton letter, No. 06cv249 Compl., Ex. A).  Heather Vincent stated that she did not know of the existence of PWH until her counsel received that letter: "My lawyers told me that they received a letter from the defendants' lawyers dated April 6, 2005 stating that Physicians for Womens [sic] Health, LLC operated Sharon Ob/Gyn as a D.B.A."  (Vincent Aff. I, Pls. Ex. 2, ¶ 4.)  Ms. Vincent further averred that she has not "ever seen [her] own medical records in this case" (Vincent Dep., Pls. Ex. 1, at 145).  Thus, while in Connecticut, one who "signs or accepts a formal written contract affecting his pecuniary interests" is deemed to have "notice of its contents," Allied Office Supplies, Inc. v. Lewandowski, Cox & W.B. Mason, Co., 261 F. Supp. 2d 107, 112 (D. Conn. 2003) (citing Ursini v. Goldman, 173 A. 789, 792 (Conn. 1934)), the contents of the signed patient information form included no information on the relationship between PWH and Dr. Mortman or Sharon Ob/Gyn.  See also United States v. Tolkow, 532 F.2d 853, 857 (2d Cir. 1976) (discussing the import of a signature in the federal tax fraud context: "Each report bore appellant's undisputed signature; that signature was prima facie proof of his knowledge of their contents.").

While the fact that plaintiff signed the information form assigning payments, or obligating herself for payment, to PWH for treatment by Dr. Mortman may imply some sort of legal

9

relationship, this evidence falls short of the "strong showing," Papenthien, 16 F. Supp. 2d at 1237-38, required of PWH on its affirmative defense that, as a matter of law, plaintiff should have known that PWH might have been an additional responsible party within two years of the date of injury.  Because the 1991 patient information form that Ms. Vincent signed gives no indication that Mortman and Sharon Ob/Gyn were doing business as PWH, rather than having a relationship of a bill collector, judgment creditor, or otherwise, a disputed issue of material fact remains as to whether Heather Vincent should have known of the d/b/a relationship and thus the existence of PWH as a potentially liable entity, or whether she, "through no fault of [her] own and despite the exercise of reasonable care, [was] ignorant of an essential jurisdictional fact," Tarnowsky, 856 A.2d at 415.  Defendant PWH is not entitled to summary judgment based on what plaintiff knew of PWH from having signed the form in 1991.

### 2. Operation of the discovery rule

Defendants' second argument as to why plaintiff's claims against PWH are time-barred is that even if plaintiff should not have known of PWH's d/b/a relationship with the other defendants until the April 6, 2005 letter from Attorney Norton, by that letter she had notice within the two-year-plus-90-day statute of limitation and is not entitled to the three-year discovery

10

period.

Although the Connecticut Supreme Court has not addressed this precise circumstance, the policies behind statutes of limitations and discovery rules provide strong guidance on how it would likely rule if presented with this issue.  "The purpose of '[a] statute of limitation or of repose is . . . to (1) prevent the unexpected enforcement of stale and fraudulent claims by allowing persons after the lapse of a reasonable time, to plan their affairs with a reasonable degree of certainty, free from the disruptive burden of protracted and unknown potential liability, and (2) to aid in the search for truth that may be impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents or otherwise.'"  Neuhaus v. DeCholnoky, 905 A.2d 1135, 1146 (Conn. 2006) (citing Tarnowsky, 856 A.2d at 415).  Tempering this basic purpose, however, is the policy behind the discovery rule, which "alleviates some potential harshness to plaintiffs" whose claims would otherwise be barred "before [they] even knew that [they] had a cause of action."  See also Hamilton v. Smith, 773 F.2d 461, 465 (2d Cir. 1985) (relying on discovery rule to reverse grant of summary judgment in favor of defendants on statute of limitations grounds with respect to medical malpractice claim pursuant to Conn. Gen. Stat. § 52-584).

In Lagassey, 846 A.2d 831, plaintiff-executrix of the estate

11

of Wilfred J. Lagassey brought a medical malpractice claim in
September 1994 based on the alleged mistreatment of decedent's
aneurysm in 1992 just before his death, contending that she could
not have known until August 1994 that defendant had acted
negligently toward decedent.  The Connecticut Supreme Court
reversed dismissal of the claim which had been found time-barred
under Conn. Gen. Stat. § 4-148,[7] which provides a one-year
statute of limitation and a three-year statute of repose in
similar form to Conn. Gen. Stat. § 52-584, holding: "the
limitation periods in §§ 4-148(a) and 52-584 do not begin to run
until a plaintiff discovers or should have discovered a <u>legal</u>
injury, i.e., actionable harm." <u>Id.</u> at 845 (emphasis in
original).  This language tracks <u>Taylor</u>, 817 A.2d at 624
("[U]nder [§ 52-584], an injured party must bring an action
within two years of the time when he or she discovered or, in the
exercise of reasonable care, should have discovered, the
injury."), and <u>Hamilton</u>, 773 F.2d at 465 ("[I]t is more

_____

[7] The statute provides in relevant part:

(a) Except as provided in subsection (b) of this
section, no claim shall be presented under this chapter
but within one year after it accrues. Claims for injury
to person or damage to property shall be deemed to
accrue on the date when the damage or injury is
sustained or discovered or in the exercise of
reasonable care should have been discovered, provided
no claim shall be presented more than three years from
the date of the act or event complained of.

Conn. Gen. Stat. § 4-148(a).

consistent with the general purpose of a discovery rule to commence the limitation period only when the plaintiff discovers his legal injury.").

In Catz, 513 A.2d 98, the plaintiff-executor of Elaine S. Foster's estate brought a medical malpractice claim arising from misdiagnosis of Foster's breast cancer in June 1982.  The Connecticut Supreme Court found that the action was not time-barred as a matter of law because a question of fact existed as to when Foster should have known that she had an actionable harm: when her cancer was discovered in May 1980 or in April 1982 when she was advised by another doctor that defendant's negligence was causally connected to the metastasis of the cancer.

Assuming the misdiagnosis of Foster occurred sometime before May 1980, if the related correct diagnosis date triggered the running of the statute of limitation, suit would have been required to be filed by May 1982.  However, in finding a triable issue as to whether the April 1982 second physician opinion, given within the original two years, triggered the statute of limitation, the Connecticut Supreme Court implicitly determined that the later date would have commenced the running of the statute without regard to the two-year period after the injury occurred, so long as suit was brought not more than three years from the date of injury.  "[T]he statute of limitations begins to run when the claimant has knowledge of facts which would put a

13

reasonable person on notice of the nature and extent of an injury and that the injury was caused by the wrongful conduct of another." Id. at 102 (quoting Mastro v. Brodie, 682 P.2d 1162, 1168 (Colo. 1984) (internal quotation marks omitted). Therefore, whether the legal injury ("actionable harm") is discovered before or after the two-year point from when the actual injury was sustained is irrelevant, since it is the point of discovery that begins the running of the statute of limitation, up to three years from when the actual injury was sustained. Therefore, if plaintiff Heather Vincent should not have known of the legal identity and significance of PWH until April 2005, she had until June 13, 2006 (three years plus 90 days after Brianna's birth) to commence suit.

## B. Negligent Infliction of Emotional Distress

### 1. Direct injury claim as distinguished from bystander claim

The defendants' Motion for Summary Judgment on plaintiff Heather Vincent's claim for negligent infliction of emotional distress highlights the distinction between claims of negligent infliction of emotional distress in which a plaintiff is directly injured by the acts or omissions of another and claims of bystander emotional distress resulting from seeing injury inflicted on another. Bystander claims in medical malpractice cases were rejected by the Connecticut Supreme Court in Maloney v. Conroy, 545 A.2d 1059 (Conn. 1988), which held that it was

14

"not inclined to follow the lead of the California courts in allowing a bystander to recover for emotional disturbance resulting from malpractice upon another person that a bystander may have observed," id. at 1061. Subsequently, Clohessy v. Bachelor, 675 A.2d 852 (Conn. 1996), cast some doubt on whether it intended to exclude the entire category of medical malpractice cases from the new cause of action for bystander emotional distress of which it announced recognition if certain conditions are met.[8]

> Although we discussed Dillon [v. Legg, 441 P.2d 912 (Cal. 1968),] at length in both Amodio [v. Cunningham, 438 A.2d 6 (Conn. 1980),] and Maloney, in neither case did the factual scenario present the court with an opportunity to make a definitive ruling on whether to recognize a cause of action for bystander emotional distress. Central to this court's concern in Amodio and Maloney was that "the etiology of emotional disturbance is usually not readily apparent as that of a broken bone following an automobile accident . . . ."  The problem is compounded when the underlying act of negligence with respect to the victim is medical malpractice because there generally is no significant observable sudden traumatic event by which the effect upon the bystander can be judged. For this precise reason most courts have recognized that a cause of action for bystander emotional distress must be confined in order to avoid limitless liability.

Clohessy, 675 A.2d at 859 (quoting Maloney, 545 A.2d at 1061).

> Some Connecticut trial courts have held that "until the rule

---

[8] The four elements required for a bystander emotional distress claim are: 1) close relationship to the injury victim; 2) contemporaneous sensory perception; 3) substantial injury or death to the victim; and 4) serious emotional injury). See Clohessy, 675 A.2d at 52-56.

in <u>Maloney</u> is reversed, modified, or limited by the Supreme Court, a cause of action for bystander emotional distress in medical malpractice cases is not recognized." <u>Gustaitis v. Middlesex Hospital</u>, No. CV010095907S, 2002 WL 1837849, at *4 (Conn. Super. Ct. July 9, 2002) (granting defendant hospital's motion to strike plaintiff mother's claim of bystander emotional distress where the choice of vaginal, rather than caesarian, delivery caused the baby's death); <u>see also</u> <u>D'Attilo v. Viscarello</u>, No. CV054003079, 2005 WL 2206784 (Conn. Super. Ct. Aug. 15, 2005) (granting defendant physician's motion to strike plaintiff mother's bystander and negligent infliction of emotional distress claims in action arising from birth and delivery of plaintiff's infant son).

Other Connecticut trial courts considering the issue in the context of obstetrical malpractice cases have viewed the plaintiff-mothers not as "bystanders" but as "an active participant in the birthing of a child," <u>Johnson v. Day Kimball Hospital</u>, No. CV063592, 2001 WL 128911, at *4 (Conn. Super. Ct. Jan. 24, 2001) (quoting <u>Manville v. Williams</u>, No. CV 9765055S, 1998 WL 182407, at *3 (Conn. Super. Ct. Apr. 9, 1998)); <u>Chavarria v. Stamford Health System, Inc.</u>, No. CV000175976S, 2001 Conn. Super. LEXIS 1826, at *3 (Conn. Super. Ct. June 28, 2001). Another variant is the observable, traumatic event context of <u>Constantino v. Avery Center for Obstetrics & Gynecology, P.C.</u>, 32

F. Supp. 2d 506 (D. Conn. 1998), in which a father who witnessed the obstetrician fail to catch his newborn during birth, resulting in permanent injuries to the newborn, was permitted to bring a bystander claim under Clohessy.

Here, however, plaintiff is not claiming such "bystander" recovery, but is seeking recovery for her own injuries, thus avoiding the predicament of trying to separate her emotional injury to herself during the labor and delivery process from her emotional injury resulting from perceiving injury to her infant during that process.

At her deposition in March 2005, Ms. Vincent expressed feeling "emotional distress" "since the birth of Brianna." (Vincent Dep., Pls. Ex. 1 [Doc. #274-2], at 141-42.)  In an October 23, 2006 affidavit, she avers that she was "affected in a profound and substantial way by the circumstances surrounding the delivery," is "often depressed due to the changes in [her] life," and has "experienced sleeplessness, nausea and headache" and "emotional distress and upset."  (Vincent Aff. II, Pls. Ex. 3 [Doc. #274-4], ¶¶ 2, 3, 7).

**2. Elements of negligent infliction of emotional distress**

In Connecticut, negligent infliction of emotional distress requires proof that:

> (1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might

result in illness or bodily harm; and (4) the
defendant's conduct was the cause of the plaintiff's
distress.

Carrol v. Allstate Ins. Co., 262 Conn. 433, 444 (2003); see also

Montinieri v. S. New England Tele. Co., 175 Conn. 337, 345

(1978), and Giordano v. Gerber Sci. Prod., Inc., 2001 U.S. App.

LEXIS 29442 (2d Cir. 2001) ("To prevail on a claim for negligent

infliction of emotional distress under Connecticut law, the

plaintiff must demonstrate that each defendant knew or should

have known that the defendant's own conduct 'involved an

unreasonable risk of causing emotional distress and that

distress, if it were caused, might result in illness or bodily

harm.'").  Where a plaintiff asserts a claim of negligent

infliction of emotional distress in a medical malpractice case,

the plaintiff must additionally show a physician-patient

relationship and prove that the physician deviated from the

standard of care in the patient's treatment for physicians in the

same line of work.  See Pisel v. Stamford Hosp., 430 A.2d 1, 12

(Conn. 1980).

Defendants argue that plaintiffs have produced no evidence

that Heather Vincent suffered "independent injuries" as required

to distinguish her negligent infliction emotional distress claim

from a bystander claim.  First, defendants argue that Heather

Vincent could not remember what happened, citing her testimony

that after giving birth "it was kind of a blur" (Vincent Dep.,

Defs. Ex. B [Doc. #256-2], at 107).  Second, defendants offer the

18

Operative Report and Discharge Summary prepared by Dr. Mortman, which state respectively that after the operation "[t]he patient was taken to the recovery room in good condition" and that "[t]he patient's inhouse postoperative recovery went relatively smooth [sic]" (Oper. Rep., Defs. Ex. C [Doc. #256-2], at 2; Discharge Summ.; Defs. Ex. D [Doc. #256-2], at 2), as well as plaintiff's post-discharge note to Dr. Mortman thanking him for what he had done before she knew anything was really wrong with her baby (see Vincent Dep., Defs. Ex. B, at 107), as demonstrating that Heather Vincent cannot prove she herself suffered injuries during the labor and delivery process.  Defendants emphasize that "Ms. Vincent did not know at the time of the birth process, or even in the weeks following, that Brianna Vincent had suffered the injuries claimed in the complaint."  (Defs. Mem. at 15.)

Plaintiffs offer Heather Vincent's two affidavits and deposition transcript as their evidence that her emotional distress was caused by defendants during her labor and delivery of Brianna and that she continues to suffer said distress.[9] Heather Vincent testified that she has felt "emotional distress . . . since the birth of Brianna" (Vincent Dep., Pls. Ex. 1, at 141), and that although she is "[n]ot physically ill" (id. at

---

[9] Plaintiffs also offer the trial transcript reciting the jury instructions in Goldblatt v. Sherrington, No. CV850075052S (Conn. Super. Ct. Dec. 14, 1990) (Tr., Pls. Ex. 4 [Doc. #273-2]), presumably to illustrate the elements of a negligent infliction of emotional distress claim.  It is not, however "evidence" appropriate to oppose a summary judgment motion.

142) she "can't finish school" or do "basic normal stuff" because
of Brianna's disabilities (id. at 143).  She avers that she
suffers depression, insomnia, nausea, and headaches; "feel[s]
trapped since Brianna requires complete care and attention;" and
experiences "emotional distress and upset regarding the
circumstances surrounding the birth of Brianna and the profound
injuries that she has sustained including cerebral palsy."
(Vincent Aff. II, Pls. Ex. 3, ¶¶ 3, 6, 7.)  In addition to her
own testimony, plaintiff offers the expert opinion of Dr. C. Paul
Sinkhorn, who opines that "Brianna Vincent was not delivered
within 30 minutes of the time that the standard of care
required," representing "a deviation from the standard of care
applicable to Dr. Mortman" and constituting "a substantial factor
in Brianna Vincent's injuries."  (Sinkhorn Aff. [Doc. #149] ¶ 8d,
e.)

      Defendants do not address the first or second elements under
Carroll: that defendants' conduct created an unreasonable risk of
causing the plaintiff emotional distress and that plaintiff's
distress was foreseeable.  On the third element — that
plaintiff's emotional distress is severe enough to possibly
result in illness or bodily harm — defendants emphasize that
neither the Operative Report nor the Discharge Summary (Defs.
Exs. C, D) discloses any physical injury to Heather Vincent, and
she herself stated that she is "[n]ot physically ill" (Vincent
Dep. at 142).  This is not dispositive, however, if her emotional

injury "impair[s] her ability to carry on and enjoy life's activities," see Penix, 2004 WL 2591969 at *3.  Heather Vincent states that she is "often depressed due to the changes in [her] life," and has "experienced sleeplessness, nausea and headache" and "emotional distress and upset."  (Vincent Aff. II, Pls. Ex. 3, ¶¶ 2, 3, 7).  The record also demonstrates that she feels unable to do "basic normal stuff" because of Brianna's disabilities (Vincent Dep., Pls. Ex. 1, at 143), and "feel[s] trapped since Brianna requires complete care and attention" (Vincent Aff. II, Pls. Ex. 3, ¶ 6).  The severity of plaintiff's emotional distress has thus been put in material dispute.

Defendants also contend there is no genuine dispute of material fact on the fourth element, causation, because plaintiff cannot prove that defendants' conduct was the cause of Heather Vincent's emotional distress.  They reference her testimony that certain events of the birth process were "kind of a blur" (Vincent Dep., Defs. Ex. B, at 107), that after discharge she was "follow[ed] up with for gynecological care . . . [by] Dr. Mortman and his group" (id. at 131), and that she sent Dr. Mortman a thank-you note (id. at 13).

While plaintiff's statements of her emotional condition reflect the deep despair and emotional anguish suffered in parenting a severely disabled child, they do not support a claim that defendants' conduct during the labor and delivery process caused these injuries to her, since her emotional distress

admittedly did not exist until the catastrophic results of the allegedly negligent obstetrical care became apparent in baby Brianna.  Heather Vincent fails to adduce any evidence from which reasonable jurors could conclude that her emotional distress was caused by defendants' medical treatment of her, independent of the emotional distress caused to her when she witnessed the consequences of the alleged malpractice that injured her baby. Thus, Heather Vincent's emotional distress, by her own account commencing only when Brianna's injury became apparent, is derivative of her baby's injuries and not independently caused by defendants malpractice on her.[10]  Accordingly, the Court grants the Motion for Summary Judgment on Heather Vincent's claim of negligent infliction of emotional distress.

## IV.  Conclusion

Defendant PWH's Motion for Summary Judgment [Doc. #255] on statute of limitations grounds is DENIED; and defendants' Motion

---

[10] <u>See</u> Drown, 2002 WL 31943387 at *1 ("If the mother suffers independent injuries during the birth process, then she may maintain a cause of action.  If the infant suffers injuries, the infant may maintain a cause of action.  But the two may not be conflated.").

for Summary Judgment on Count Four, negligent infliction of emotional distress, is GRANTED.

IT IS SO ORDERED.

/s/

_____
JANET BOND ARTERTON, U.S.D.J.

**Dated at New Haven, Connecticut, this 18th day of January, 2006.**